McKAY, Respondent, v. PENNINGTON COUNTY, Appellant.

(216 N. W. 577.)

(File No. 6066.   Opinion filed December 13, 1927.)

*John F. Schrader, Clarence L, Lewis* and *Buell, Denu &*
*Philip,* all of Rapid City, for Appellant.

*Williams, Sweet & Tscharner,* of Rapid City, for Respondent.

MORIARTY, C.   On April 2, 1923, an oil truck which was
being driven by the respondent, John W. McKay, fell off a bridge
in Pennington county.   The bridge in question is located a short
distance west of the town of Creston, and, at the time of the acci-
dent, formed part of a state trunk highway.   The bridge was not
located in any city or incorporated town or organized civil town-
ship, but was in unorganized territory.

At the time that the accident occurred, the plank roadway of
the bridge and its approaches were wet and slippery from melting
snow which had been falling during that day.   McKay had crossed
this bridge, going westward, about an hour before the accident,
driving the same truck.   The accident occurred while McKay was
attempting to cross the bridge, going eastward.

The east end of the bridge proper rested upon a crib built of
logs and filled with stone.   This crib was about 3½ feet wide and
long enough, north and south, to extend the full width of the
bridge, about 16 feet.   Prior to the time of the accident the south
end of this crib had settled to such extent that the south edge of
the bridge at that point was between 18 inches and 2 feet lower
than the north edge.   A plank apron or approach about 20 feet
long was attached to the bridge a little to the west of the crib
above mentioned.   The east end of this approach rested upon the
earth of the road grade, and this east end was about 4 feet higher
than the end that attached to the bridge proper.   The slope of this
approach and the sag in the bridge, due to the subsidence of the
crib, caused a sharp V-shaped depression where the south edge of
the approach joined the south edge of the bridge proper.

When McKay attempted to cross, going eastward, the bridge, including the approach, was in the same condition as when he crossed, going westward, except that some additional snow had fallen and melted meanwhile. The truck was being driven without chains on the wheels. When the rear wheels of the truck were about 2 feet from the east end of the approach, it ceased to go forward and began to back down the slope, skidding toward the south side of the roadway, and finally backed through the railing and toppled off the south side of the bridge near the junction of the approach with the other portion of the bridge.

McKay brought this action to recover from Pennington county damages for personal injuries which he alleged that he suffered in the fall from the bridge and for expenses incurred in securing treatment for such injuries.

The jury returned a verdict for the plaintiff in the sum of $6,000. From a judgment entered upon such verdict and from an order denying a new trial the defendant county appeals.

Appellant's brief sets forth 18 assignments of error, dealing with alleged errors in the rulings of the trial court, with exceptions to the court's instructions and with the insufficiency of the evidence to support the verdict. As we view the issues presented, we will need to consider only two of the questions raised by the briefs, viz:

Was there at the time of this accident any legal liability upon counties of this state for negligence in the maintenance of state trunk highways?

If there was such liability, and negligence on the part of Pennington county caused the accident, was there contributory negligence on the plaintiff's part, sufficient, as a matter of law, to defeat his right of recovery?

Appellant's counsel contends that there was no liability on the part of the county for damages due to lack of repair or maintenance of this highway, and they cite in support of that contention Hanigan v. Minnehaha County, 47 S. D. 606, 201 N. W. 522. But in the Hanigan Case the court did not pass upon the question as it arises in the instant appeal. In that case the accident occurred on a county highway, and the court held that, although the law charged the county with the duty of maintaining that highway, there was no right of action against the county unless such right was specifically given by statute.

The accident in the Hanigan Case occurred in August, 1923. At that time chapter 285 of the Laws of 1923 was in force. That statute was not in force in April, 1923, when the accident involved in the instant case occurred. At that time the duty of maintenance was placed upon the county by the provisions of chapter 333 of the Laws of 1919, and section 61 of that chapter specifically provides that claims for damages which may be due to the insufficiency or lack of repair of the trunk highway system shall be against the county, with certain exceptions which do not apply to this case.

In the decision in the Hanigan Case the court considered the effect of the provisions of said chapter 333, Laws of 1919, and chapter 285, Laws of 1923, and in so doing used the following language:

"Nowhere in the Code of 1919, nor in subsequent statutes, has the Legislature, in terms, given the right to bring an action against a county for damages caused by negligence in the maintenance of a highway in an organized civil township except possibly in the case of state trunk highways. We say 'except possibly' advisedly, for while section 61 of said chapter 333, in terms, purports to provide for a cause of action against the county in case of damages due to the insufficiency or lack of repair of the state trunk highway system, yet chapter 285, Laws 1923, has taken from the counties the duty of repair and maintenance of such system and placed it upon the state highway commission. We are not called upon to now decide whether the liability of the county in such a case survives said 1923 enactment. In any event no cause of action is, in express terms, anywhere granted against a county for damages in the case of highways forming a part of the county highway system."

This language seems to concede that prior to the going into effect of chapter 285, Laws of 1923, there was a right of action against the counties, specifically provided for by statute in the case of state trunk highways. To that construction of the law we adhere, as the provisions of section 61 of chapter 333, above cited, clearly provide for such liability, and the rights of the plaintiff, McKay, are in no way affected by the provisions of chapter 285, Laws of 1923.

As to contributory negligence on McKay's part, the following facts are undisputed:

The truck weighed between 5,000 and 6,000 pounds. It was being operated without chains. The bridge planks were wet and slippery. The slope of the approach at the east end of the bridge was quite steep. The roadway on this approach was considerably lower at its south edge than at its north edge. McKay knew all these conditions when he attempted to drive the truck up the steep slope of the approach.

As to the matters upon which the evidence is conflicting:

Valdemar Knapp testified that McKay, while at the bridge a few minutes after the accident, stated that he had killed his engine just as the hind wheels were about to go off the bridge, that he set his brakes, and they would not hold, so he "stepped out and let her go." And Delmar Knapp says that he heard that statement.

McKay went on the stand in rebuttal, but the only evidence he gave as to this testimony of the Knapps is as follows:

"I heard Valdemar Knapp's testimony to the effect that I told him at that time that I had killed the engine; that my brakes would not work; and that I opened the door when I came upon the bridge so if anything happened I could get out. If there was any questions at all asked, they asked me how I got out and I told them. I told him I opened the door, laid my books and coats out on the brush, and climbed out on the brush.

"No, sir; I didn't tell Delmar Knapp, in substance, that I opened the door before I went upon the bridge. No, sir; I did not tell Delmar Knapp at that time that I left the door open, stepped out, and let her go."

While this testimony contradicts that of the two Knapps on the question of whether plaintiff got out of the cab before it went off the bridge or remained inside and went with the truck in its fall, it does not contradict their testimony as to the killing of the engine or the brakes failing. Several other witnesses testified that McKay showed them the point where the truck stopped and began backing down the approach. These witnesses testified that the tracks showed that the hind wheels of the truck lacked only 1 or 2 feet of going off the east end of the plank approach; that at this point the wheels began to spin and skid toward the south edge of the approach; that the spinning and skidding continued while the truck backed down about 3 feet, and then the wheels ceased spin-

ning and left a clear impression of the diamond tread on the tires for 8 or 10 feet, to where the truck toppled off into the creek.

Although McKay went on the stand to dispute Valdemar Knapp's statement, he did not dispute the testimony of the other witnesses as to these matters. Therefore the undisputed evidence shows that the accident was due to the fact that the heavy truck, without chains, could not make the grade of the approach in its slippery condition; that the brakes, if set, failed to hold the vehicle from backing down the grade; that the spinning wheels caused the truck to skid toward the low edge of the roadway to such an extent that when the spinning ceased the vehicle backed off the approach.

The plaintiff's theory is that the south edge of the bridge was not resting on the crib which supported it near the west end of the approach span, and that when the weight of the truck came upon this unsupported point the south side of the bridge surface or roadway sank down, causing the truck to tip over off the bridge. The evidence does not support that theory. If there was a sudden sinking at that point, the truck remained right side up and its wheels in contact with the planks of the roadway for nearly 20 feet beyond that point, still remaining at about the center of the roadway, and then backed nearly the same distance down the slope before backing off the bridge. It may be true that the vehicle would not have skidded toward the south edge of the road, had not that edge been lower than the north edge, and that fact might be considered as establishing negligence in allowing the structure to remain in that condition, but the record shows that it was the failure of the plaintiff's truck to make the slippery grade without chains, and the failure of his brakes to hold the truck from backing, that was directly responsible for the accident.

Section 8654 of the Revised Code of 1919 provides:

"Every motor vehicle, operated or driven upon the public highways of this state, shall be provided with adequate brakes in good working order, sufficient to control such motor vehicle at all times when the same is in use."

The evidence of two witnesses is that McKay stated that he had killed his engine and set his brakes, and that the brakes would not hold. Although he disputed these witnesses as to what he said about the opening of the cab door, he did not contradict what they said as to the brakes. The undisputed testimony of several wit-

nesses is that the wheel tracks showed that after the spinning of the wheels stopped a clear imprint of the tread of the tire was left on the wet planks of the bridge. Therefore the wheels were turning and not slipping when the truck backed off the bridge. McKay's own evidence shows that the surface of the bridge planks was quite slippery. If the brakes were not sufficient to hold the wheels from turning under such conditions, they did not comply with the requirements of section 8654 above quoted. Violation of those requirements is made a misdemeanor punishable by a fine.

Certainly one who attempts to drive a heavy motor truck up a steep and slippery bridge approach, without having chains on the wheels of the truck, and without brakes sufficient to hold the wheels from revolving, and who does this with full knowledge of the condition of the roadway, has been guilty of negligence as a matter of law, and has no right to recover from the county for any damages which he may suffer from an accident to which his said negligence contributed as a proximate cause.

The record in the instant case shows that the respondent was guilty, as a matter of law, of contributory negligence sufficient to bar his recovery for any damages which he may have suffered from the accident to which such negligence on his part contributed.

The learned trial court erred in denying the defendant's motion for a directed verdict.

The judgment and order appealed from are reversed, and the cause is remanded, with direction that the trial court enter judgment in favor of the defendant, county of Pennington, appellant herein.

GATES, POLLEY, SHERWOOD, and BURCH, JJ., concur.

CAMPBELL, P. J. (dissenting). Reading all the testimony in this case as abstracted in the briefs, it seems to me quite clear that the question of contributory negligence was for the jury upon all the facts. By their verdict, under the instructions, they have said there was none. Being unable to adopt the view, upon a consideration of all the evidence, that the record necessarily shows contributory negligence as a matter of law, and being unable judicially to notice as many matters relating to the operation of motor vehicles on wet bridges as seem to be taken under judicial notice in the foregoing opinion, I am compelled to dissent.